**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **BRIAN BOLCAR,** *individually and on behalf of all those similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>**AMERICAN AVENUE PROPERTY MANAGEMENT LLC,**<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiff Brian Bolcar ("Plaintiff") brings this class action against American Avenue Property Management LLC ("Defendant") and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## PRELIMINARY STATEMENT

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227) (the "TCPA"). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. The TCPA affords special protections for people who, like Plaintiff, requested to be placed on a company's internal do not call list. Specifically, the TCPA provides that each person who receives more than one call on their cell phone after requesting to be placed on the company's internal do not call list is entitled to recover a penalty of up to $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

3. The TCPA likewise affords special protections for people who, like Plaintiff, have their phone number registered on the National Do Not Call Registry. Specifically, the TCPA provides that each person who receives more than one call on their cell phone after registering their phone number on the National Do Not Call List is entitled to recover a penalty of up to $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

4. The problem with receiving unwanted telemarketing communications is a problem that most people in this country, like Plaintiff, frequently face. For example, in 2024 alone, approximately 52.8 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited January 6, 2025). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790 11553770803.

**NATURE OF THE CLAIM**

5. This is a putative class action brought pursuant to the TCPA.

6. To promote its goods, services, and/or properties, Defendant engages in unsolicited phone calls and text messaging and continues to call and text message consumers after they have opted out of Defendant's solicitations. Defendant also engages in telemarketing without the required policies and procedures, and training of its personnel engaged in telemarketing. Further, to promote its goods, services, and/or properties, Defendant engages in unsolicited phone calls and text messaging to consumers that have registered their telephone numbers on the National Do Not Call Registry.

7. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, which has resulted in the intrusion upon seclusion, invasion of privacy, harassment, aggravation, and disruption of the daily life of Plaintiff and members of the Classes. Plaintiff also seeks statutory damages on behalf of Plaintiff and members of the Classes, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

8. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the TCPA.

9. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant directs, markets, and provides its business activities to this District, Defendant's principal place of business is located within the Southern District of New York, and because Defendant's unauthorized marketing scheme was directed by Defendant to consumers in this District.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant's principal place of business is located within the Southern District of New York.

## PARTIES

11. Plaintiff is a natural person entitled to bring this action under the TCPA, and a citizen and resident of Pasco County, Florida.

12. Defendant is a Delaware Limited Liability Company with its headquarters located in New York, New York.

13. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## FACTUAL ALLEGATIONS

14. Defendant has repeatedly and persistently sent text messages and phone calls to Plaintiff for a period of years despite Plaintiff sending Defendant clear and unambiguous opt-out instructions.

15. On September 20, 2024, Defendant sent a telemarketing call to Plaintiff as depicted in the following screenshot.




16. Plaintiff has no relationship with Defendant whatsoever. Upon information and belief, Defendant is a property management company with properties and tenants throughout the United States. Plaintiff has never been a tenant of Defendant.

17. As depicted in the following screenshots, Defendant's text messages to Plaintiff show that Defendant references Plaintiff by a multitude of different names, including Tyler, Gary, Sarah, Alex, Elonie, Demetrius, Brianna, Marjae, and Braylen, amongst many other names. Plaintiff's name is Brian.

18. On information and belief, Defendant references Plaintiff by the names listed in the preceding paragraph because these names correspond to actual tenants that reside on Defendant's property.

19. As depicted in the following screenshots, Defendant texts and calls Plaintiff for the purposes of both debt collection and marketing. Plaintiff does not owe any debt to Defendant because Plaintiff has no relationship with Defendant whatsoever. Furthermore, as depicted in the following screenshots, Plaintiff has sent Defendant clear and unambiguous opt out instructions, like "STOP," and also a multitude of other reasonable opt out instructions, like "Stop texting me!" and "As I said the last time… stop calling and texting me."

20. As depicted in the following screenshots, Defendant used a multitude of phone numbers to initiate text messages and telephone calls to Plaintiff despite Plaintiff's clear opt-out instructions.

21. On or about March 12, 2025, Plaintiff received another unsolicited text message from Defendant and subsequently requested to opt-out of Defendant's phone calls and text messages by replying with a clear "STOP" instruction as reflected by the following screenshot:




22. Defendant again ignored Plaintiff's request and continued calling and text messaging Plaintiff, as demonstrated by the following screenshots:


12:31
+1 (380) 210-3730
Text Message • SMS
Tue, Mar 25 at 11:03 AM
Renew lease for 1415 Celia here: https://www.americanave.com/renewal/a0SPk000006oqcgMAA
Wed, Apr 2 at 3:31 PM
LEASE RENEWAL PROMOTION!!!!
Renew your lease at no increase if you sign today!
Sign here: https://www.americanave.com/renewal/a0SPk000006oqcgMAA
Let me know if you have questions or need assistance.
Thank you, Sarah
Why do you keep harassing me?
Mon, Apr 28 at 4:58 PM
Do you watnt to renew your lease?
Why do you keep harassing me?
Do you want to renew your lease?
Why do you keep harassing me?
Text Message • SMS


12:24
+1 (202) 949-2403
Text Message • SMS
Wed, Apr 30 at 2:12 PM
Hello, Alex. This is Jara from American Avenue. This is just a courtesy message regarding your will pay by date. Should there be any issues in making the payment, please let us know as soon as possible to avoid further actions on your account. Thank you.
Why do you keep harassing me?
Fri, May 2 at 2:24 PM
Hello, Elonie. This is Jara from American Avenue. This is just a courtesy message regarding your will pay by date. Should there be any issues in making the payment, please let us know as soon as possible to avoid further actions on your account. Thank you.
Why do you keep harassing me?
Fri, Jun 27 at 11:40 AM
Hello, Demetrius. This is Jara from American. Just a quick reminder about your outstanding balance of $134.00. Please arrange for the full payment immediately to avoid late fees and additional charges. Staying current is
Text Message • SMS


12:31
+1 (380) 214-2012
Siri Found a Contact
Jhon
+1 (380) 214-2012
Add
Text Message • SMS
Tue, May 6 at 11:29 AM
Hi, Brianna. This is Jhon from American Avenue. I was calling to discuss the balance on your account. Can you please provide me the date of when can you clear your past due balance in full to avoid further actions?
Why do you keep harassing me
The sender is not in your contact list.
Report Junk
Text Message • SMS


12:31
+1 (326) 222-4756
Text Message • SMS
Thu, May 22 at 4:51 PM
Hi! This is Aki with American Avenue. I wanted to reach out with a few renewal options. I am attaching the renewal link below as well. If you have any questions, please text or let me know if you want to jump on a call!
https://www.americanave.com/renewal/a0SPk000006oqcgMAA
We look forward to you staying with American Avenue.
The sender is not in your contact list.
Report Junk
Text Message • SMS


12:25
+1 (202) 949-2403
Mon, Aug 11 at 2:04 PM
Hello, Marjae. This is Jara from American Avenue. The updated payment plan agreement is now in your email, please sign immediately.
Fuck you
Mon, Sep 8 at 12:54 PM
Hello, Braylen. This is Jara from American Avenue. I will be calling momentarily to discuss your account and provide possible options to avoid late fees & additional charges that are to be applied to your account. Thank you!
Fuck you
Mon, Sep 8 at 3:17 PM
Hello, Braylen. This is Jara from American Avenue. Just a quick reminder about your outstanding balance of $1,769.80. Please arrange for the full payment immediately to avoid late fees and additional charges. Staying current is essential to maintain your housing. Please provide the date that your balance will be paid in full. I will notate your account accordingly. Thank you!
Fuck you
Text Message • SMS


12:25
+1 (380) 208-1792
Text Message • SMS
Tue, Sep 30 at 2:28 PM
Good day to you Braylen Stokes, this Colene from American Avenue. This is a reminder about your outstanding balance of $934.90. Staying current is essential to maintain your housing.
Could you reply with the specific date you plan to clear the balance? Thank you.
Fuck you
God bless you!
God bless your harassing ass company
Thank you, Braylen Stokes.
That's not even my name dumb ass
Then, don't respond. Smart.
Y'all are so incompetent you don't even know who you are speaking with or if they even have American avenue. You just machines gun random numbers hoping for money
God bless your incompetent greedy ass
Text Message • SMS







23. On January 13, 2026, Defendant sent Plaintiff the marketing text messages displayed below. Again, Plaintiff responded with the clear and unambiguous opt-out instruction "STOP."




24. Defendant sent Plaintiff the telephone call displayed below on March 2, 2026, nearly one-year after Plaintiff sent Defendant the "STOP" opt-out instruction from March 12, 2025.




25. Defendant sent Plaintiff the text message displayed below on February 19, 2026, nearly one-year after Plaintiff sent Defendant the "STOP" opt-out instruction from March 12, 2025.




26. Defendant sent Plaintiff the text message displayed below on March 3, 2026, nearly one-year after Plaintiff sent Defendant the "STOP" opt-out instruction from March 12, 2025.




27. As depicted in all of the above screenshots, Defendant repeatedly texts and calls Plaintiff despite Plaintiff's clear and unambiguous opt-out instructions.

28. Overall, Defendant sent Plaintiff a significant amount of telephone calls and text messages. A majority of these phone calls and text messages were initiated by Defendant *after* Plaintiff's numerous opt-out requests. While many of Defendant's calls and text messages were for the purposes of debt collection, Defendant also engaged in telemarketing towards Plaintiff on at least eight occasions, and Plaintiff responded to such telemarketing efforts with clear and unambiguous opt-out requests on multiple occasions (as displayed by the above screenshots).

29. As demonstrated by the above screenshots, the purpose of Defendant's marketing phone calls and text messages was to solicit the sale of consumer goods, services, and/or properties.

Specifically, Defendant was marketing their residential rental properties and leases. Defendant sent promotional text messages to Plaintiff in an attempt to encourage Plaintiff to sign or renew a lease, which Plaintiff had no connection with.

30. As demonstrated by the above screenshots, the purpose of Defendant's marketing phone calls and text messages was to advertise, promote, and/or market Defendant's goods, services, and/or properties.

31. As demonstrated by the above screenshots, Defendant does not honor consumer requests to opt-out of phone call and text message solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's phone call and text message solicitations multiple times by telling Defendant not to contact Plaintiff anymore, but Defendant completely disregarded Plaintiff's opt-out instructions and continued to call and text message Plaintiff for telemarketing purposes.

32. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive phone calls or text messages from Defendant. The precise details regarding its lack of requisite policies and procedures are solely within Defendant's knowledge and control.

33. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not provide training to its personnel engaged in telemarketing. The precise details regarding its lack of training are solely within Defendant's knowledge and control.

34. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not maintain a standalone do-not-call list. The precise details regarding its lack of training are solely within Defendant's knowledge and control

35. Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative phone calls and text messages it sent to

Plaintiff as reflected by the fact that Plaintiff made multiple opt-out requests and those requests were never processed; they were ignored by Defendant and its employees and Defendant continued to initiate phone calls and text messages directed at Plaintiff.

36. Defendant sent at least eight marketing solicitations after Plaintiff's first opt-out request.

37. Plaintiff is the regular user of the telephone number ending in 1705 that received the above phone call and text message solicitations.

38. Plaintiff registered the cellular telephone number on the National Do-Not-Call Registry on or about September 23, 2021.

39. Plaintiff utilizes the cellular telephone that received Defendant's phone calls and text messages for personal purposes and the number is Plaintiff's residential telephone line.

40. Upon information and belief, Defendant has access to outbound transmission reports for all phone calls and text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each and text message sent to Plaintiff and the members of the Classes. Defendant also has access to text message logs showing Plaintiff's and the Class members' inbound opt-out requests.

41. Plaintiff has not transacted any business with Defendant within the past eighteen (18) months before receiving the above phone calls and text messages. Also, Plaintiff has not made any inquiry regarding Defendant's products or services within the past three (3) months before receiving the above phone calls text messages.

42. Defendant's calls and text messages caused Plaintiff and the Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

## CLASS ALLEGATIONS

43. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiff and all others similarly situated.

44. Plaintiff brings this case on behalf of the classes defined as follows (collectively, the "Classes").

> **IDNC Class - all persons within the United States who, within the four years prior to the filing of this lawsuit through the date of class certification, received two or more phone calls and/or text messages within any 12-month period, from or on behalf of Defendant, regarding Defendant's goods, services, or properties, to said person's residential telephone number, *after* communicating to Defendant that they did not wish to receive phone calls or text messages by replying to the calls and/or messages with a "stop" or similar opt-out instruction.**

> **DNC Class - all persons in the United States who from four years prior to the filing of this action through the date of class certification (1) Defendant, or anyone on Defendant's behalf, (2) placed more than one phone call and/or text message call within any 12-month period; (3) where the person's telephone number that had been listed on the National Do Not Call Registry for at least thirty days; (4) regarding Defendant's property, goods, and/or services; (5) who did not purchase or transact business with Defendant during eighteen immediately preceding the date of the first call or message; and (6) who did not contact Defendant during the three months immediately preceding the date of the first call or message with an inquiry about a product, good, or service offered by Defendant.**

45. Plaintiff reserves the right to modify the definition of the Classes as warranted as facts are learned in further investigation and discovery.

46. Defendant and its employees or agents are excluded from the Classes.

### NUMEROSITY

47. Plaintiff does not know the exact number of members of the Classes but is informed and believes that there are at least 50 individuals that fall within each class definition given Defendant's use of automated robotexts to solicit consumers and refusal to honor stop requests.

The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

48. The exact number and identities of the members of the Classes are unknown at this time and can only be ascertained through discovery. Identification of the members of the Classes is a matter capable of ministerial determination from Defendant's call records.

**<u>COMMON QUESTIONS OF LAW AND FACT</u>**

49. There are numerous questions of law and fact common to members of the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the members of the Class are:

a. As to the IDNC Class
    i. Whether Defendant initiated phone calls and text messages to Plaintiff and class members;
    ii. Whether Defendant continued to initiate phone calls and text message solicitations after opt-out requests;
    iii. Whether Defendant failed to honor Plaintiff's and the class members' opt-out requests;
    iv. Whether Defendant implemented the requisite training of personnel under section 64.1200;
    v. Whether Defendant maintains an internal do-not-call list and instructs its employees on how to use the list;
    vi. Whether Defendant maintains the required policies and procedures under section 64.1200; and
    vii. Whether Defendant is liable for damages, and the amount of such damages.

b. As to the DNC Class:
    i. Whether Defendant initiated solicitation phone calls and text messages to Plaintiff and the class members who had registered their numbers on the National Do Not Call Registry; and

ii. Whether Defendant is liable for damages, and the amount of such damages.

50. The common questions in this case are capable of having common answers, and Plaintiff and the members of the Classes will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

51. Plaintiff's claims are typical of the claims of the members of the Classes, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

52. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

53. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

54. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

**COUNT I**
**VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the Class)**

55. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1-54 as if fully set forth herein.

56. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making an artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed ten (10) business days from the receipt of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request. A person or entity making an artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) or any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a call is made or an affiliated entity.

57. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

58. Plaintiff and the IDNC Class Members are residential telephone subscribers who received more than one phone call and/or text message made for purposes of telemarketing or solicitation purposes from Defendant, who has failed to implement the requisite procedures and personnel training as demonstrated by its failure to honor opt-out requests.

59. Plaintiff and the IDNC Class members made requests to Defendant not to receive phone calls or texts from Defendant.

60. Plaintiff and the IDNC Class Members revoked any consent they may have provided Defendant by responding with "stop" or similar opt-out instructions.

61. Defendant continued to call and text message Plaintiff and the IDNC Class Members to harass them into making purchases from Defendant.

62. Defendant failed to honor Plaintiff's and the IDNC Class members' opt-out requests.

63. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

64. Plaintiff and the IDNC Class members are informed and believe that Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls or text messages.

65. Plaintiff and the IDNC Class members are informed and believe that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list.

66. Plaintiff and the IDNC Class members are informed and believe that Defendant does not train its personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list.

67. The details and specific facts regarding Defendant's failure to maintain the required policies and procedures, as well as personnel training, are solely within Defendant's knowledge and possession.

68. Defendant has violated 47 C.F.R. § 64.1200(d) by failing to honor opt-out requests, failing to maintain the required policies and procedures, and failing to train its personnel engaged in telemarketing.

69. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the IDNC Class members are entitled to an award of $500.00 in statutory damages for each and every negligent violation.

70. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the IDNC Class members are entitled to an award of $500.00 in statutory damages for each and every knowing or willful violation.

**COUNT II**
**VIOLATIONS OF 47 U.S.C. § 227(c) AND 64.1200(c)**
**(On Behalf of Plaintiff and the Class)**

71. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1-54 as if fully set forth herein.

72. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides in pertinent part that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

73. Per 47 C.F.R. § 64.1200(e), § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers." 47 C.F.R. § 64.1200(e).

74. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

75. Defendant violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to telephone subscribers such as Plaintiff and the DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

76. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and DNC Class members received more than one phone call and/or text message in a 12-month period from Defendant in violation of 47 C.F.R. § 64.1200.

77. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the DNC Class members are entitled to an award of $500.00 in statutory damages for each and every negligent violation.

78. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the DNC Class members are entitled to an award of $500.00 in statutory damages for each and every knowing or willful violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

(a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

(b) An award of statutory damages for Plaintiff and each member of the Classes as applicable under the TCPA;

(c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

(d) An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(d) by (1) maintaining the required written policies; (2) providing training to their personnel engaged in telemarketing; and (3) maintaining a do-not-call list;

(e) An injunction requiring Defendant to comply with 47 C.F.R. 64.1200(c); and

(f) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

**DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendant and the phone calls and text messages as alleged herein.

Dated: March 9, 2026

Respectfully Submitted,

/s/ Zane C. Hedaya

**ZANE C. HEDAYA, ESQ.**
New York Bar No.: 6135339
E-mail: zane@jibraellaw.com
The Law Offices of Jibrael S. Hindi
1515 NE 26th Street,
Wilton Manors, Florida 33305
Phone: 813-340-8838

*COUNSEL FOR PLAINTIFF*